IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JESSICA KLAWITTER,

                Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                Defendant.

OPINION AND ORDER

21-cv-216-slc

---

Plaintiff Jessica Klawitter seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration,[1] denying her claim for disability insurance benefits (SSDI) and supplemental security income (SSI) under the Social Security Act. 42 U.S.C. § 405(g). Klawitter contends that the administrative law judge (ALJ) who denied her claim erred by: (1) failing to account for the unique nature of fibromyalgia in dismissing her subjective symptoms; and (2) not addressing the consistency between the opinions of her treating psychiatrist and a psychologist who evaluated her. In addition to these challenges on the merits, Klawitter contends that the ALJ lacked authority to act on her claim because the Acting Commissioner holds her office on a constitutionally illicit basis. Because I am not persuaded that any of the issues raised by Klawitter warrant remand, I am affirming the Acting Commissioner's decision denying Klawitter benefits.

---

[1] Because Kilolo Kijakazi has replaced Andrew Saul as the head of SSA, I have amended the case caption accordingly.

**FACTS**

The following facts are drawn from the Administrative Record (AR), filed with the Commissioner's answer in this case:

On May 21 and June 5, 2018, Klawitter filed SSDI and SSI applications for a period of disability beginning on May 3, 2018, when she was 38 years old. AR 225. She alleges disability based on degenerative disc disease of the cervical and lumbar spine, fibromyalgia, chronic fatigue syndrome, mood disorder, personality disorder, ADHD, anxiety disorder, depression with anxiety, and migraines. After Klawitter's applications were denied initially and on reconsideration, ALJ Noceeba Southern held a telephonic administrative hearing on May 29, 2020, at which Klawitter and a vocational expert (VE) testified. *Id.* Klawitter was represented by her attorney, Dana Duncan. *Id.* The ALJ issued a written decision on July 9, 2020, finding that Klawitter was not disabled.

The ALJ determined that Klawitter is severely impaired by degenerative disc disease of the cervical and lumbar spine, fibromyalgia, sacroiliitis, obesity, anxiety, depression, personality disorder, and ADHD but that she retained the residual functional capacity (RFC) to perform a limited range of light work. AR 228, 231. Specifically, the ALJ found that Klawitter had the following limitations: no more than frequent handling with the left upper extremity; simple routine tasks with few detailed instructions; off task up to 5% of the day and may need a reminder one or two times per day to focus and get back to work; no over the shoulder supervision; no fast pace or strict production quotas; only occasional changes that are well explained and occasional decision-making to provide for low stress; no more than occasional but superficial interaction with coworkers and supervisors, with superficial being that which is

beyond the performance of job duties and job functions, for a specific purpose, and a short duration; avoiding interactions with the public; and routine, scheduled breaks every two hours. AR 231.

In reaching this decision, the ALJ considered but was not persuaded by Klawitter's self-reported symptoms and limitations. AR 232, 238. The ALJ also found the opinions of Klawitter's treating physician (Dr. Fabio Catao), an examining psychologist (Dr. Gregory Cowan), and the state agency medical and psychological consultants unpersuasive, but the ALJ stated that the state agency mental assessments supported the RFC limitations that she assessed. AR 238-39. Relying on the testimony of the VE, the ALJ found that Klawitter could perform work in the representative occupations of assembler, inspector, and hand packager. AR 240. After the Appeals Council denied Klawitter's appeal, she filed her appeal in this court.

## OPINION

In reviewing an ALJ's decision, I must determine whether the decision is supported by "substantial evidence," meaning "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). This deferential standard of review means that the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. Apr. 14, 2021) (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)). We also do not "scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law judge must identify the relevant evidence and build a

3

'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted); *see also Deborah M.*, 994 F.3d at 788 ("an ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability"); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Klawitter contends that the ALJ did not adequately account for her fibromyalgia in evaluating her subjective symptoms, failed to address the consistency between Dr. Catao's and Dr. Cowan's opinions, and lacked authority to act on her claim.

## I. Subjective Complaints Related to Fibromyalgia

Klawitter argues that the ALJ's assessment of her fibromyalgia is flawed because the ALJ did not consider the waxing and waning nature of fibromyalgia or the longitudinal history of her treatment as required by Social Security Ruling (SSR) 12-2p, ignored her subjective symptoms by focusing on objective findings that have little to do with fibromyalgia, and did not explain how her findings supported the RFC. *See* SSR 12-2p, 2012 WL 3104869, at *6 (Jul. 25, 2012) ("We consider the effects of all of the person's medically determinable impairments . . . [and] will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'"); *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) ("The extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment."). In particular, Klawitter contends that the ALJ failed to appreciate the unique symptoms, diagnostic methods, and treatment methods associated with

4

fibromyalgia, including that fibromyalgia is often assessed based on a patient's subjective reporting of symptoms. *See Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (ALJ may not reject claimant's reports of pain from fibromyalgia solely because there is no objective medical evidence supporting it); *Brown v. Berryhill*, 2019 WL 499410, at *4 (N.D. Ind. Feb. 7, 2019) ("The ALJ has not explained how evidence of normal range of motion, gait, motor strength, and results from neurological examinations are inconsistent with significant limitations due to fibromyalgia."); *Jacobs v. Berryhill*, No. 16-cv-408-wmc, 2018 WL 1557252, at *2 (W.D. Wis. Mar. 30, 2018) ("[I]t is irrelevant to look at test results showing a normal and steady gait to discount an RFC opinion by a treating physician because it was based on reports of fibromyalgia pain.").

Contrary to Klawitter's contention, the ALJ did not dismiss the severity of her fibromyalgia without analysis, nor did the ALJ fail to consider Klawitter's subjective complaints. The ALJ provided a thorough discussion of the longitudinal medical evidence, summarizing almost five years of treatment notes, medical and psychological evaluations, imaging studies, and treatment providers' objective examinations and medication decisions. AR 233-37. The ALJ acknowledged that Klawitter's providers believed that fibromyalgia was the best unifying diagnosis. AR 233-34. The ALJ noted Klawitter's subjective complaints—both in the written reports and in the hearing testimony—of chronic pain, fatigue, anxiety, an inability to lift or carry even light objects, difficulty concentrating and staying focused, and difficulties standing, walking, and sitting for very long. AR 232. The ALJ found that Klawitter's fibromyalgia is a severe impairment and that her fibromyalgia, along with arthritis and degenerative disc disease, supported restricting Klawitter to light work. However, for several reasons, AR 238, the ALJ

5

concluded that the evidence of record did not support further limitations or a finding of disability for Klawitter. *See* SSR 16-3p ("We will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them.").

The ALJ cited numerous examination findings (both physical and neurological) that were normal or otherwise unremarkable despite Klawitter's subjective complaints. AR 232-38 (citing AR 1107-11, 1348-50, 1474-78, 1636-41, 1726-29, 1738-41, 2071-78, 2183-85, 2364-67). For example, she pointed out that Klawitter's MRI results and musculoneurological evaluations between 2017 and 2019 were unremarkable, AR 233-35, and that Klawitter's March 2018 rheumatology examination for fibromyalgia showed that she had a good range of motion, no swelling or synovitis, no spine tenderness, negative straight leg raising, and a nonfocal neurological examination, even though she had 18/18 fibromyalgia tender points, AR 234 (citing AR 1348-50). The ALJ also found it significant that Klawitter resisted coming off medications that contributed to her cognitive fogginess. AR 234 (citing AR 1107-11).

The ALJ noted that evidence in the record strongly suggested that Klawitter exaggerated her symptoms and limitations at times. AR 232, 236. For example, Klawitter provided extreme responses during validity measures on psychological testing consistent with exaggeration[2] (AR 2651-64), her treating providers described her as dramatic and theatrical at times and suspected a possible histrionic personality disorder (*see, e.g.,* AR 2155, 2158, 2161, 2192), and her

---

[2] During psychological testing in October 2019, the evaluator noted that there was some potential that Klawitter's profile presents an exaggerated picture of current conditions and problems. AR 2660.

description of left foot drop and difficulties using her left arm were not consistent with the objective evidence. As the Commissioner argues, it is appropriate and reasonable for ALJs to consider discrepancies between the objective evidence and a claimant's subjective description of symptoms as evidence of exaggeration. *See, e.g., Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration."); *Belmore v. Berryhill*, 2018 WL 4440558, at *4 (E.D. Wis. Sept. 14, 2018) (ALJ reasonably concluded that inconsistencies between Belmore's complaints and diagnostic imaging suggested symptom exaggeration).

The ALJ pointed out that Klawitter was able to go camping and travel to New Mexico for a family vacation in 2018 without physical difficulties. AR 234, 236. Although travel and other daily activities do not by themselves equate to working a 40-hour work week, the ALJ was entitled to find that they showed that Klawitter was not as limited as she alleged. *Burmester*, 920 F.3d at 510; *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("[I]t is entirely permissible [for an ALJ] to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated.") (citation and internal quotation omitted).

Klawitter does not identify any medical evidence or restrictions that the ALJ overlooked or should have included. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) (claimant bears burden of proving she is disabled); *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (A claimant is not entitled to remand if she "does not identify medical evidence that would justify further restrictions."). Rather, she takes issue with the fact that the ALJ relied on unremarkable

findings and other objective evidence to discount her subjective complaints. However, as the Court of Appeals for the Seventh Circuit has explained:

> The Social Security Administration's guidance on evaluating fibromyalgia, *see* SSR 12-2P, limits only the evidence used to diagnose the disease as a medically determinable impairment (step two in the five-step analysis). It does not limit the evidence an ALJ can consider in evaluating the severity of fibromyalgia for purposes of determining a residual functioning capacity. Further, the Social Security Administration's guidance on how to evaluate pain (fibromyalgia's chief symptom) directs ALJs to consider the very symptoms that the ALJ considered here. *See* 20 C.F.R. § 404.1529(c)(2) ("[E]vidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms.").

*Gebauer v. Saul*, 801 Fed. App'x. 404, 410 (7th Cir. 2020); *see also Apke v. Saul*, 817 Fed. App'x 252, 258 (7th Cir. 2020) (citing same and affirming ALJ who found claimant's daily activities and minor doses of medications and injections were inconsistent with allegations of debilitating fibromyalgia pain).

This court has applied *Gebauer* on several occasions and has held that an ALJ is entitled to consider objective medical findings (or the lack thereof), treatment history, and daily activities in discounting a claimant's self-reports of pain and limitations due to fibromyalgia. *See, e.g., Green v. Kijakazi,* No. 20-cv-295-slc, 2021 WL 4305007, at *3-4 (W.D. Wis. Sept. 22, 2021); *Boardman v. Saul,* No. 19-cv-546-jdp, 2021 WL 822558, at *3 (W.D. Wis. Mar. 4, 2021); *Lathrop v. Saul*, No. 19-cv-895-slc, 2020 WL 7078829, at *4-5 (W.D. Wis. Dec. 3, 2020).

Klawitter argues that this case differs from this court's most recent decision in *Green* because the ALJ in this case did not rely on any medical opinion to support her RFC. Klawitter does not explain why this distinction makes a difference. Although an ALJ must evaluate the

8

medical opinions of record and explain why an opinion is not adopted if it conflicts with the RFC, she is not *required* to rely entirely on a particular physician's opinion or choose between opinions. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *Vincent G. v. Saul*, 2020 WL 3046435, at *5 (N.D. Ind. June 8, 2020) (ALJ need not rely on medical opinion to determine the RFC); SSR 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The ALJ met this standard. She considered the medical opinions of treating psychiatrist Dr. Fabio Catao, consultative examining psychologist Dr. Gregory Cowan, and the state agency medical and psychological consultants, she explained why she was not persuaded to impose the more extreme limitations assessed by Drs. Catao and Cowan, and she explained why she found that the record supported greater physical limitations than those assessed by the state agency physicians. AR 238-39. Although the ALJ adopted a more restrictive physical RFC (light work with frequent left handling) than recommended by the state agency physicians, she adopted the mental limitations assessed by the state agency psychologists at the reconsideration level of review.

True, some people may have such a severe case of fibromyalgia as to be totally disabled from working, "but most do not." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *see also Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("It is not enough to show that she had received a diagnosis of fibromyalgia with a date of onset prior to the expiration of the insured period, since fibromyalgia is not always (indeed, not usually) disabling."). Here, the ALJ reasonably concluded from the evidence of record that Klawitter's fibromyalgia had not totally disabled her. Although it is possible that the ALJ could have reached a different conclusion with respect to the allegedly disabling effects of Klawitter's fibromyalgia, it is not this court's role to second guess

the ALJ's well-supported decision. *See Johnson v. Berryhill*, 745 Fed. App'x 247, 251 (7th Cir. 2018) (even though claimant "offered evidence that could reasonably support a finding of total disability," ALJ could still find fibromyalgia not disabling because "[r]esolving the conflicting evidence about such a close case, in which subjective pain is so critical, is a job for the ALJ in the first instance"). As the Seventh Circuit has explained with respect to fibromyalgia:

> Since pain is subjective and affects people in different ways, it is difficult to determine how much pain is present and how great its effects are. Fibromyalgia can have a wide range of effects. Almost any conclusion an ALJ reaches in such situations may be inconsistent with some evidence in the record and consistent with other evidence. This is where the substantial-evidence standard of review matters.

*Kolar v. Berryhill*, 695 Fed. App'x 161, 162 (7th Cir. 2017).

Because I conclude that the ALJ's assessment of Klawitter's fibromyalgia, her subjective symptoms, and the objective medical evidence are supported by substantial evidence, the ALJ's alleged failure to consider Klawitter's subjective complaints is not a basis for remand.

## II. Medical Opinions

Klawitter contends that the ALJ should have given more weight to the opinions of Drs. Catao and Cowan because they are consistent with each other.[3] Under the rules applicable to Klawitter's claim, an ALJ is required to consider the persuasiveness of each medical opinion—regardless of its source—focusing on support from the objective medical evidence and

---

[3] Klawitter does not challenge the ALJ's stated reasons for discounting these or any other medical opinions.

consistency between medical and non-medical sources. *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019); 20 C.F.R. § 404.1520c.

In March 2019, Dr. Catao completed a form provided by Klawitter's attorney in which he stated that he had seen Klawitter every "4-8 weeks" since December 2017 "for 3 minutes," AR1499, and found that she met or equaled the criteria for listings 12.04 (affective disorders) and 12.06 (anxiety disorders), AR 1496-99. He assessed a Global Assessment of Functioning (GAF) score of 55-65 (indicating moderate symptoms) and checked boxes stating that Klawitter would be off task 30% of the work day, miss five or more days of work per month, be unable to complete a full workday five or more days per month, not be able to work full time for a continuous period of at least six months, and had a marked limitation in social functioning and an extreme limitation in maintaining concentration, persistence, or pace. AR 1500-04. The ALJ found this level of limitation unsupported by the medical record, including Dr. Catao's own treatment notes. AR 238.

As with Klawitter's subjective complaints, the ALJ noted that there was evidence of Klawitter's exaggeration during Klawitter's psychological testing a few months later but no significant neuropsychological deficits and that Klawitter "often presents as dramatic, immature, and/or histrionic but without significant cognitive impairment, impaired thoughts, or similar findings" during psychological treatment and examinations. AR 238.

Dr. Cowan performed a consultative examination on Klawitter on October 4, 2018, finding that Klawitter's ability to understand, remember, and carry out simple instructions was unimpaired; her ability to understand, remember, and carry out more complex or multi-step instructions was markedly impaired; her ability to respond appropriately to supervisors and

coworkers was moderately impaired; her concentration and attention were moderately impaired with medication and markedly impaired without medication; and her ability to withstand routine work stresses and adapt to workplace changes was moderately-to-markedly impaired. AR 1471-72. Unlike, Dr. Catao, Dr. Cowan did not provide any specific functional limitations for Klawitter. As a result, the ALJ found his assessment not probative of what Klawitter could do despite her impairments. AR 237. She also found that the degree of impairment noted by Dr. Cowan overstated Klawitter's limitations for similar reasons as Dr. Catao's opinion.

As the Commissioner argues, there is limited overlap between Dr. Catao's and Dr. Cowan's opinions. Klawitter cites 20 C.F.R. § 404.1520c(c)(2) for the proposition that "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." However, she fails to identify what additional RFC restrictions the ALJ should have included based on the consistency between these opinions, and she does not cite any other evidence that would have supported some of the extreme functional limitations that Dr. Catao assessed. *See Karr*, 989 F.3d at 513; *Loveless*, 810 F.3d at 508. Moreover, Klawitter fails to rebut the well-supported reasons the ALJ gave for discounting these opinions. Accordingly, Klawitter has not shown that the ALJ committed reversible error in weighing the opinions of Drs. Catao and Cowan.

### III.  Constitutional Challenge

Klawitter argues that 42 U.S.C. § 902(a)(3), which limits the President's authority to remove the commissioner of social security without cause, is unconstitutional. She says that as a result, the ALJ lacked authority to act on her claim and that she is entitled to remand for a

new, constitutionally adequate proceeding. Klawitter bases this now-familiar argument on the Supreme Court's recent decision in *Seila L. LLC v. Consumer Fin. Prot. Bureau*, ___ U.S. ___, 140 S. Ct. 2183, 207 L. Ed. 2d 494 (2020), in which the Court considered and rejected the statutory authority of the director of the Consumer Financial Protection Bureau (CFPB), finding that limitations on the President's ability to remove the single head of an administrative agency violate the separation of powers. The Acting Commissioner concedes that the removal provision is unconstitutional under *Seila* but correctly points out that the Supreme Court has since made clear that a defective removal provision does not automatically void all agency action. *See Collins v. Yellen*, ___ U.S. ___,, 141 S. Ct. 1761, 1788 n.3 (2021) ("The unlawfulness of a removal provision does not strip an official of the power to undertake the other responsibilities of his office.").

Klawitter attempts to distinguish *Collins* as applying only to cases involving actions by acting directors not subject to a for-cause removal provision, but this court has cited to *Collins* in other social security appeals to hold that "a plaintiff seeking to bring such a constitutional challenge must demonstrate that the alleged unconstitutional, statutory removal restriction actually caused her some injury, and plaintiff has failed to do so here." *Schwechel v. Kijakazi*, No. 20-CV-700-wmc, 2022 WL 135022, at *5 (W.D. Wis. Jan. 14, 2022) (noting that no other district or circuit court has credited argument to date); *see also Kreibich v. Kilolo*, dkt. 25, no. 20-cv-1045-bbc (W.D. Wis. Feb. 23, 2022) (holding same); *Hale v. Kijakazi*, No. 20-CV-866-wmc, 2022 WL 153274, at *4 (W.D. Wis. Jan. 18, 2022) (holding same); *Roth v. Kijakazi*, No. 20-CV-1077-jdp, 2021 WL 6062062, at *6 (W.D. Wis. Dec. 22, 2021) ("Because Roth has not

13

alleged any connection between the removal provision and the decision denying him benefits, he is not entitled to remand on this basis.").

Klawitter argues that the decision to deny her benefits was made using a constitutionally illicit process, but she has failed to articulate any basis for finding that she was harmed by the Social Security Administration's structure or show that the relevant statutory removal restriction caused the denial of her claim.[4]  *See Schwechel*, 2022 WL 135022, at *5; *Roth*, 2021 WL 6062062, *5 (citing *Collins*, 141 S. Ct. at 1789, as "suggest[ing] that harm could be fairly traced to the removal provision where 1) the commissioner played a role in the agency action *and* 2) the president would have removed the commissioner to prevent the action but-for the removal provision."). Klawitter has merely identified a conflict between the Constitution and 42 U.S.C. § 902(a)(3), but that is not enough.[5]  *See Collins*, 141 S. Ct. at 1790 ("[I]dentifying some conflict between the Constitution and a statute is not enough. [Plaintiffs] must show that the challenged Government action at issue . . . was, in fact, unlawful.") (Thomas, J., concurring). Accordingly, I conclude that the alleged unconstitutionality of the acting commissioner's authority is not a basis for remand in this case.

---

[4] Klawitter devoted only five pages in her opening brief to her constitutional argument and did not address *Collins* or the issue of injury until her 21-page reply brief, even though *Collins* was decided almost four months before she filed her motion for summary judgment. "This is a highly problematic strategy . . . given that arguments raised for the first time in a reply brief are waived." *Wonsey v. City of Chi.*, 940 F.3d 394, 398 (7th Cir. 2019).  In any event, Klawitter's argument regarding injury focuses on her not receiving a "constitutionally valid" adjudication and decision-making process.

[5] Although Klawitter mentions in her reply brief that President Biden was unhappy with Commissioner Saul, she has not explained how Biden's inability to remove Saul in early 2021 could have had any impact on the ALJ's 2020 benefit determination in her case. *See Roth*, 2021 WL 6062062, *5 (finding same).

**ORDER**

IT IS ORDERED that the that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Jessica Klawitter's application for disability benefits, is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 21st day of March, 2022.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge